**I. M. A. G. E. (INCORPORATED MEXICAN–AMERICAN GOVERNMENT EMPLOYEES), Antonio Califa, and Ginger Coronado,**

v.

**The EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Eleanor Holmes-Norton, Chairwoman of Commission, the U. S. Civil Service Commission, Abner W. Sibal, Individually, George Darden, Individually, Annie C. Clay, Individually, Beverly Gary, Individually, William Robinson, Individually, Ethel Bent Walsh, Individually, Maxine Cade, Individually, William Lewis, Individually (and all Unknown Others).**

Civ. A. No. 78–K–778.

United States District Court, D. Colorado.

May 3, 1979.

John G. Canny, Denver, Colo., for plaintiffs.

Clement Hyland, Anthony J. De Marco, Barbara Lipsky, John Mosby, EEOC, Washington, D. C., for defendants.

Jerre Dixon, Asst. U. S. Atty., Denver, Colo., for U. S. Civil Service Commission only.

## ORDER OF DISMISSAL

KANE, District Judge.

This is a class action by the Incorporated Mexican-American Government Employees [hereinafter referred to as "I.M.A.G.E."], Antonio Califa, and Ginger Coronado for declaratory relief, injunctive relief, and damages to redress the alleged deprivation of rights secured by Title VII of the Civil Rights Act of 1964; the fifth amendment to the United States Constitution; 42 U.S.C. § 1985(3); and 5 U.S.C. § 702.

Plaintiffs Califa and Coronado are both of Hispanic origin. I.M.A.G.E. is a non-profit corporation which has as its corporate purpose the furtherance and enhancement of employment opportunities of its members in state, federal, and local government.

The corporate and individual plaintiffs are bringing this action on behalf of themselves and all others similarly situated. The class which plaintiffs represent is composed of Spanish surnamed males and females who are now, have been, might have been, or might become employed by the Denver Regional Office of General Counsel [hereinafter referred to as the "ORC"] or by the Office of General Counsel of the Equal Employment Opportunity Commission [hereinafter referred to as the "EEOC"], or by the other regional litigation centers since January, 1973 and who have been, continue to be, or might be adversely affected by the practices complained of in the complaint. The ORC is an office staffed with attorneys and support personnel for the trial of cases brought by the EEOC under Title VII in an 11 state area.

Plaintiffs allege that a third party allegation of discrimination against the ORC and the Office of General Counsel was filed on

July 23, 1976 pursuant to 5 C.F.R. § 713.251 (1975). It is further alleged that neither the EEOC nor the Civil Service Commission took any action regarding said third party allegation of discrimination.

Plaintiffs Califa and Coronado allege specific instances of discrimination aimed at them personally at the time they applied for employment with the ORC. Califa applied for a position as an attorney and Coronado applied for a position as a legal research assistant. They both allege that they were and are well qualified to serve in the capacities for which they applied and that defendants intentionally have engaged in and continue to engage intentionally in unlawful employment practices and policies at the ORC.

The plaintiffs allege that defendants have established a hiring, promotion, and seniority system which limits the employment and promotional opportunities of Hispanic employees because of their national origin. Plaintiffs contend that the defendants (both individually and in concert) have instructed and allowed those for whose actions they are responsible, to conduct and further a pattern of discriminatory conduct consisting of malfeasance, nonfeasance, and preferential treatment for blacks against the plaintiffs and their membership and other non-black employees of the ORC. Plaintiffs urge that this pattern of discrimination is based solely on national origin.

Plaintiffs further allege that the aforementioned acts constitute a violation of 42 U.S.C. § 1985(3) in that the defendants maliciously conspired together in order to deny equal protection of the laws to Hispanics, other non-black employees of the ORC, and applicants for employment at the ORC. Plaintiffs contend that applicants for employment at the ORC were directly affected by defendants alleged conduct after defendants became aware of the grievances lodged by Hispanics against them for their alleged discriminatory practices.

Plaintiffs allege that defendants did commit and engage in the conduct complained of and have injured the plaintiffs and members of the corporate plaintiff in their persons and property; deprived them of their rights and privileges as citizens of the United States; and that the defendants actions have deprived plaintiffs and the class they represent of equal employment opportunities. Plaintiffs further allege that the defendants have violated 5 U.S.C. § 702 by their failure to act on the third party complaint filed by the corporate plaintiff.

On September 15, 1978, defendant EEOC filed a motion to dismiss or in the alternative for summary judgment. On September 29, 1978, defendant United States Civil Service Commission filed a motion to dismiss. Plaintiffs filed an amended complaint on December 7, 1978 which was followed by defendant EEOC's second motion to dismiss or in the alternative for summary judgment, filed on December 22, 1978. A hearing was held on January 12, 1979 at which time the motion to dismiss filed by the Civil Service Commission was granted and the motion to dismiss or in the alternative for summary judgment filed by the EEOC was taken under advisement.

Plaintiffs filed a second amended complaint on February 12, 1979 along with a supplemental memorandum of law. Defendants filed a reply to plaintiffs' supplemental memorandum on March 12, 1979. The matter is now ready for disposition.

Defendants contend that plaintiffs may only seek relief against the EEOC under § 717 of the Civil Rights Act of 1964 [42 U.S.C. § 2000e–16] and that, consequently, plaintiffs' claims under the fifth amendment, 5 U.S.C. § 702, and 42 U.S.C. § 1985(3), must be dismissed. Defendants urge that § 717 provides the "exclusive remedy" for federal employment discrimination.

In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the United States Supreme Court stated that "§ 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835, 96 S.Ct. at 1969. The Court noted that

[t]he balance, completeness, and structural integrity of § 717 are inconsistent with

the petitioner's contention that the judicial remedy afforded by § 717(c) was designed merely to supplement other putative judicial relief. *Id.* at 832, 96 S.Ct. at 1968.

In *Wells v. Perry,* 14 EPD ¶ 7709 (D.D.C. 1977), the United States District Court for the District of Columbia dismissed plaintiff's second claim for relief which had been premised on 42 U.S.C. § 1985(3). In the complaint, plaintiff alleged that the individual defendants had conspired to deprive her of her rights to be free from discrimination in federal employment. The court concluded:

> [P]laintiff may not invoke this statute in an attempt to remedy alleged federal employment discrimination through an allegation of conspiracy on the parts of federal officers acting within the scope of their federal authority. Congress has provided, as the Supreme Court has explicitly recognized, a comprehensive remedy for such grievances within the framework of Title VII, one which is more than adequate to provide redress in this case.
> . . . *Id.* at 5505.

■ The remedies available to victims of alleged discrimination in federal employment are thus limited to those provided for in 42 U.S.C. § 2000e–16. Accordingly, plaintiffs' claims for relief under the Fifth Amendment to the United States Constitution; 42 U.S.C. § 1985(3); and 5 U.S.C. § 702 are dismissed for failure to state a claim upon which relief can be granted.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants urge that plaintiffs have failed to exhaust prerequisite administrative remedies and, accordingly, the amended complaint and civil action should be dismissed for lack of subject matter jurisdiction. Defendants submit that in the absence of at least one proper class representative having pursued the individual complaint procedure, which in this case has not been alleged, an action based on a third party allegation of discrimination is insufficient to satisfy the exhaustion requirement necessary to bring a class action.

■ The law is clear that prior to filing a civil action in the United States District Court, a complainant must first seek relief from the agency which has allegedly discriminated against him or her. *Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). *See* 5 C.F.R. § 713.201 *et seq.* The exhaustion of the administrative process within the agency is a jurisdictional prerequisite to filing suit in federal court. *Swain v. Hoffman,* 547 F.2d 921 (5th Cir. 1977). Plaintiffs Califa and Coronado, the class representatives in this class action, have not alleged that they filed individual charges of discrimination with the EEOC.

The issue here is whether the failure of the individual complainants in this case to pursue and exhaust their administrative remedies is fatal to the maintenance of this class action. A review of the applicable regulations and case law supports the conclusion that it is.

The third party allegations of discrimination were served on the defendant EEOC by the corporate plaintiff I.M.A.G.E. in a letter dated July 23, 1976. Title 5 of the Code of Federal Regulations, Section 713.-251 (1975),[1] provides as follows:

1. Effective April 18, 1977, the Civil Service Commission amended its regulations revoking the third party allegation regulation, § 713.-251(b). In addition, an amendment was made to § 713.212 providing that "the agency shall provide in its regulations for the acceptance of class complaints in accordance with Subpart F." 5 C.F.R. §§ 713.601 *et seq.* sets forth the administrative route for meeting § 717(c)'s exhaustion requirement with the filing of a class complaint initially at the agency level. Subpart F was added in recognition that the "third party allegations are in reality complaints of discrimination" and that this new procedure would be the way to resolve the problem. The following "supplementary information" was included in 42 FR 11808 (March 1, 1977):

> In addition, some commentators perceived that the elimination of the third party procedure would effectively prevent outside organizations from bringing matters of concern to the attention of the agency. To the extent

(a) *Coverage.* This section applies to general allegations by organizations or other third parties of discrimination in personnel matters within the agency *which are unrelated to an individual complaint of discrimination* subject to §§ 713.211 through 713.222.

(b) *Agency procedure.* The organization or other third party shall state the allegation with sufficient specificity so that the agency may investigate the allegation. The agency may require additional specificity as necessary to proceed with its investigation. The agency shall establish a file on each general allegation, and this file shall contain copies of all material used in making the decision on the allegation. The agency shall furnish a copy of this file to the party submitting the allegation and shall make it available to the Commission for review on request. The agency shall notify the party submitting the allegation of its decision, including any corrective action taken on the general allegations, and shall furnish to the Commission on request a copy of its decision.

(c) *Commission procedures.* If the third party disagrees with the agency decision, it may, within 30 days after receipt of the decision, request the Commission to review it. The request shall be in writing and shall set forth with particularity the basis for the request. When the Commission receives such a request, it shall make, or require the agency to make, any additional investigations the Commission deems necessary. The Commission shall issue a decision on the allegation ordering such corrective action, with or without back pay, as it deems appropriate.

The defendants argue that neither § 717 nor the Civil Service Commission regulations, 5 C.F.R. § 713.201 *et seq.* (1975), provide for the filing of a civil action under § 717 by an organization which had filed a third party allegation of discrimination pursuant to 5 C.F.R. § 713.251 (1975). Defendants contend that the old § 713.251 was designed to provide a generalized overall review of an agency's personnel policies vis-a-vis alleged discrimination and did not serve as the proper administrative foundation for litigation seeking the specific relief sought herein. Hence, it is defendants' position that only individual complaints, and not third party allegations of discrimination, can satisfy the exhaustion requirements of § 717.

The Sixth Circuit, in *James v. Rumsfeld*, 580 F.2d 224 (6th Cir. 1978), was confronted by the precise issue in the case at bar. In concluding that plaintiffs had not exhausted their administrative remedies in pursuing *only* the generalized third party procedure, the Sixth Circuit reasoned:

The language of both § 713.212(b) and § 713.251(a) made it clear that the two possible administrative remedies were distinct, although not mutually exclusive since a generalized third party procedure could possibly include grievances cognizable under the individual complaint procedure. The only administrative remedy pursued here was a third party allegation filed by plaintiffs and three others on behalf of their union local. The district court properly held that the third party allegation could not serve to meet § 717(c)'s exhaustion requirement and that only an individual complaint could, obviating leave to amend.

A Title VII suit in federal court is designed to provide specific relief for specific grievances. This is also the purpose of the individual complaint process in §§ 713.211–713.222. The third party allegation procedure in § 713.251, contrariwise, was designed to provide a general-

---

that third party allegations are in reality complaints of discrimination, the Commission believes the new class complaint procedures will serve as a better means to resolve such matters. . . .

In determining which regulations to apply to the case at bar, the significant factor is the date on which the administrative relief was begun, i. e., July 23, 1976. Hence, the old § 713.251 must be applied in determining whether the requisite administrative remedies were exhausted in this case. See *James v. Rumsfeld,* 6 Cir., 580 F.2d 224, 228 n.5.

ized overall review of an agency's personnel policies vis-a-vis alleged discrimination. *The generalized inquiries and findings appropriate to a third party procedure, and evidenced in this case, are simply not a proper administrative foundation for litigation seeking specific relief. The agency has not been afforded an opportunity to remedy specific grievances, which is one of the purposes behind the exhaustion requirement.*

Plaintiffs assert that even if a third party allegation is not appropriate exhaustion for an individual's federal Title VII suit, it should be sufficient exhaustion for a class action, as the complaint here seeks to bring. We disagree. This court has upheld the propriety of class actions in federal Title VII suits and held that all members of the class need not individually exhaust their administrative remedies. *Williams v. Tennessee Valley Authority,* 552 F.2d 691 (6th Cir. 1977). But *Williams* still required a class representative who had properly exhausted administrative remedies, which is not the case here. Class actions still make specific, albeit class-wide, allegations of injury which would not necessarily be covered by the generalized third party allegation procedure. Thus, even a class action could not have been maintained here unless at least one proper class representative had pursued the individual complaint procedure.

*Id.* at 227–28 (emphasis added). In a footnote, the Sixth Circuit also observed that

[a] technical reading of the regulations also reveals that old § 713.251 nowhere used the word "complaint" (save for a reference to the individual complaint procedure) but rather referred to an "allegation". Sections 713.211–713.222, however frequently refer to a "complaint." Section 717(c) also refers to a "complaint of discrimination" in its grant of jurisdiction, suggesting that only individual "complaints" and not third party "allegations" can satisfy the exhaustion requirement.

*Id.* at 228 n.3. *See also McLaughlin v. Hoffman,* 547 F.2d 918 (5th Cir. 1977); *Barrett v. United States Civil Service Commission,* 69 F.R.D. 544 (D.D.C.1975).

On July 23, 1976, corporate plaintiff I.M. A.G.E. filed "allegations" with the EEOC under old regulation § 713.251. The allegations were set forth in a letter addressed to Mrs. Ethel Bent Walsh, the then acting Chairman of the EEOC. Specifically, the letter states:

Pursuant to 5 Code of Federal Regulations 713.251, the Denver Chapter of IMAGE hereby files these Third Party Allegations of Discrimination against the Denver Regional Office of General Counsel specifically, and the Office of General Counsel generally.

The thrust of these allegations is that the Denver Regional Office of General Counsel specifically, and the Office of General Counsel generally, and the above-named individuals, individually and acting in concert, both in their official and individual capacity, have discriminated against persons of Hispanic descent on the basis of their National Origin.

### Allegations

The Denver Regional Office of General Counsel specifically, the Office of General Counsel generally, and above-named individuals have in the past maintained and presently maintain discriminatory employment practices against Hispanics on account of their national origin. The discriminatory policies and practices include, but are not limited to the following:

1. Failing to recruit Hispanics for *all* positions.
2. Failing to hire Hispanics for *all* positions.
3. Failing to appoint a Spanish Speaking Program Coordinator in accordance with provisions of the Agency Affirmative Action Plan for FY '74, '75, and continued to fail to appoint a coordinator until July, 1976.

The effect of the policies and practices complained of in paragraphs one through three above has been to deprive Hispanics

of equal employment opportunities and otherwise to adversely affect their status as employees, or potential employees, on account of their national origin.

The letter was signed by Alex L. Vigil, Regional Director of I.M.A.G.E. and President of the Denver Chapter.

There is no evidence that plaintiffs made any further inquiries of the EEOC or the Civil Service Commission as to the status of their third party allegations of discrimination before coming to this court. Furthermore, it is obvious that the allegations in this letter were tailored to the old § 713.251 and were thus unrelated to any of the individual complaints of discrimination presently before this court.

■ As recognized by the Sixth Circuit, in *James v. Rumsfeld, supra,* one of the principal purposes behind the exhaustion requirement is to give the agency the opportunity to remedy specific grievances. The allegations made by I.M.A.G.E. in its third party allegation did no more than give the EEOC an opportunity to make a cursory examination of its hiring and promotional policies. In the absence of concrete allegations of individual discrimination, this letter filed by I.M.A.G.E. was like a voice crying in the wilderness.

It is indeed unfortunate that the agency's attention was not directed to the alleged discriminatory treatment of plaintiffs Califa and Coronado. The EEOC would have thus been forced to investigate the specific circumstances surrounding the alleged incidents of discrimination and render its decision accordingly. The policies behind the exhaustion principle would have thus been fulfilled, and, in the event that complaints of class-wide and systemic discrimination were uncovered, class-wide relief could have been sought. *See Barrett v. U. S. Civil Service Commission,* 69 F.R.D. 544 (D.D.C. 1975).

■ Plaintiffs' argue that there is no need to exhaust administrative remedies when an attempt to do so would be futile. Plaintiffs reliance on *Ellis v. Naval Air Rework Facility,* 404 F.Supp. 391 (N.D.Cal. 1975) in support of their position is misplaced.

The District of Columbia Circuit, in *League of United Latin American Citizens v. Hampton,* 163 U.S.App.D.C. 283, 501 F.2d 843 (1974), was confronted with a situation where the appellants failed to exhaust their administrative remedies with a governmental agency whose mandated responsibility was to see that discrimination was eliminated in governmental employment practices. Defendant Hampton was the Chairman of the United States Civil Service Commission. Quoting Judge Smith from his opinion in *Douglas v. Hampton,* 338 F.Supp. 18 (D.D. C.1972), the District of Columbia Circuit held:

> Plaintiffs' contention that remand [to the Commission] is not appropriate because the Commission is a party is without merit. Remand may be ordered where the Commission not only is a party and has vigorously defended the issues being litigated, but has refused to entertain the matter when it was first brought before it. . . . Plaintiffs also advance the contention that the Commission has prejudged every important issue and that further proceedings before it under the new regulations would be futile. *There has, however, been no showing that the Commission will act other than in accordance with law in developing the factual foundation upon which its decision should be based.* 338 F.Supp. at 23. (Emphasis added.)

The District of Columbia Circuit concluded that

> the mere assertion by the appellants that they will be unable to receive a fair and unbiased hearing and the contention that the decision makers have already prejudged their case is insufficient in this case to allow them to totally forsake their administrative remedies and continue with this suit in its present form. 163 U.S.App.D.C. at 286, 501 F.2d at 846.

In *Douglas, supra,* the court also addressed the administrative procedures in a class action situation:

"The doctrine requiring exhaustion of administrative remedies applies to class actions as well as individual actions. . . [I]t is generally agreed that exhaustion by at least one member of the class is a necessary prerequisite for a class action. Where not even one member of the class has either pursued an administrative remedy or has shown why one of the exceptions to the exhaustion rule is applicable, there is a barrier, absent unusual circumstances, to the class action". . . Thus, even assuming arguendo, that the appellants had standing to bring this action, they would not be allowed to pursue this as a class action since none of them had exhausted the available administrative remedies and the district court could not under any circumstances have granted class relief. *Id.,* 163 U.S.App.D.C. 287, 501 F.2d at 847.

Courts have acknowledged the inherent appearance of unfairness in the complaint procedure since the agency is investigating and judging complaints lodged against itself. *Williams v. Tennessee Valley Authority, supra.* However, in *League of United Latin American Citizens v. Hampton, supra,* the court concluded that there exists a presumption that administrative agencies will act in accordance with the law in reviewing complaints of discrimination. Further, federal employees claiming discrimination in employment are afforded protection from abuse by the availability of *de novo* review in the United States District Court.

Courts have recognized that there may be particular situations where any attempt to file a complaint of discrimination with the alleged discriminating agency would be futile. *League of Latin American Citizens v. Hampton, supra.* However, the fact that I.M.A.G.E. filed a third party allegation of discrimination with the EEOC effectively undermines any contention that it was considered futile by plaintiffs Califa and Coronado to pursue the individual complaint procedure. It is easier for an agency to support the conclusion that general allegations of discrimination lack merit than to summarily dismiss specific instances of alleged discrimination; especially when the latter may be subject to *de novo* review in the United States District Court.

Since the regulations require that initial investigation of complaints be conducted by the alleged discriminating agency, it is questionable whether it would have been any more futile for these individual plaintiffs to have filed a complaint with the EEOC than any prospective employee of any other agency. Further, there is no evidence to support the conclusion that an investigation and hearing conducted by the EEOC in this case would have been so unfair as to have made the filing of an individual complaint futile.

Upon finding that the plaintiffs in this class action have failed to exhaust their administrative remedies, it is

ORDERED that this complaint and civil action are dismissed for lack of subject matter jurisdiction.